UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MONICA V. BOYD, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL ASTRUE, Commissioner of Social Security Administration, <br><br> Defendant. | CASE NO.  C06-5530FDB <br><br> REPORT AND RECOMMENDATION <br><br> Noted for April 6, 2007 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

## INTRODUCTION

Plaintiff, Monica Boyd, was born in 1975, and she was 27 years old on the alleged disability onset date of February 25, 2003.  Plaintiff graduated from high school, attended some college classes, joined the army, but was discharged when she failed to complete boot camp.  Plaintiff has work experience as an electrical assembler, paint masker, security guard, video clerk, and plastic assembler (Tr. 69, 355). Plaintiff reported that she had concentration and memory problems stemming from a February 2003 slip and fall incident  (Tr. 343).  She worked for several months during 2004 as a video store clerk.

REPORT AND RECOMMENDATION
Page - 1

1    Plaintiff filed her application for disability insurance benefits and SSI disability benefits on June 3, 2003, and alleged disability beginning February 25, 2003, from "[h]ead injury with loss of consciousness" when she slipped and fell on some toothpaste at a Walgreen's store (Tr. 60-62, 77, 167).  Her applications were denied initially and at the reconsideration level (Tr. 31-34, 37-38). Plaintiff then requested a hearing before an ALJ, which was held on November 28, 2005 (Tr. 331-357).  Plaintiff,  vocational expert (VE) Susan Stewart, and medical expert (ME) Bruce Olson, Ph.D., testified at the hearing (Tr. 331-357).  On March 31, 2006, the ALJ issued a decision in which he found that Plaintiff was not disabled (Tr. 12-28). The ALJ's decision became the Commissioner's final decision on July 17, 2006, when the Appeals Council denied Plaintiff's request for review (Tr. 7-9). See 20 C.F.R. § 404.981, 416.1481, 422.210.  The ALJ's decision of March 31, 2006, therefore became the final administrative decision.

The Complaint in this matter was filed on September 15, 2006, in which Plaintiff challenges the administration's denial of social security benefits.  Specifically, plaintiff contends the ALJ failed to properly consider Plaintiff's mental limitations as determined by Dr. Lloyd Cripe, PhD.  Plaintiff argues the ALJ failed to incorporate Dr. Cripe's opinion into his consideration of Plaintiff's mental residual functional capacity.  Defendant counter-argues that the ALJ applied the proper legal standards and that the ALJ's findings and conclusions are properly supported by substantial evidence.  After reviewing the matter, the undersigned submits the following report, recommending affirmation of the administrative decision.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

*A.  THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE*

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226,

1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. <u>Walden v. Schweiker</u>, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1996). In <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ improperly evaluated the opinion of Dr. Cripe. Dr. Cripe is not a treating physician. Dr. Cripe performed a single neuropsychological evaluation, which included a clinical interview, a mental status examination, and numerous tests (Tr. 260-281). The ALJ reviewed Dr. Cripes report in his opinion, stating the following:

> Claimant saw neuropsychologist Lloyd Cripe, Ph.D., on the referral of her attorney. Dr. Cripe administered tests on November 11 and 12, 2004. Dr. Cripe noted that claimant appeared to give poor effort at times during the evaluation, but that she was generally cooperative. Claimant was single but was dating, and her boyfriend was in Iraq. They had their first date in October 2003, and communicated by email. Claimant had a seven-year-old son who lived in Alabama with his grandmother on the father's side. She stated she had contact with him once or twice a week when she remembered to call him. She reported a rather complete amnesia about her early life. She recently worked in a video store for five or six months but"had to quit because of headaches and forgetting things." She reported that when she fell at Walgreen's in February 2003 she was unconscious for a length of time or did not remember falling. She stated that she once went back to that Walgreen's and "really freaked out." She was currently trying to "relearn everything and still don't know how I am." She stated she had had improvements but continued to have problems that included almost-daily headaches, ongoing cognitive problems, ongoing problems with emotions; and problems functioning around groups of people. She had problems getting to sleep. She tried to be happy but when she saw a mother with a child she was "depress all day." Her activities included self-grooming, email, working on puzzles, meal preparation, socialization with friends, Nintendo games, and reading (16F. 1-14).
>
> Dr. Cripe noted that claimant had sub-optimal effort and motivation during some of the standardized tests. He stated that while there was no indication of frank malingering, there was variability of effort which cast doubt on the validity of the test results. Claimant's full-scale IQ was 80, her verbal IQ was 81, and her performance IQ was 81. These scores are in the low-average ranges. He noted that her overall level of performance on neuropsychological tests was in a normal range, and that most of her specific neuropsychological functions were within normal ranges. Although claimant reported

REPORT AND RECOMMENDATION
Page - 3

    variability in the control of her emotions, Dr. Cripe observed that her emotions were well-controlled if not excessively well-controlled. Dr. Cripe conjectured that claimant grew up in a difficult situation, was rebellious, and struggled to find her adult identity. While claimant did state that a family member referred to her as "the rebellious one" there is clearly insufficient evidence of these things. He stated that claimant's February 2003 accident occurred in the context of a lot of stressors, and that claimant lost control and was physically hurt. The undersigned notes that the tests following that fall did not show any specific injury. He felt claimant's current presentation was "more that of a psychological stress reaction than of frank brain injury." He felt that given her psychological status, her employability was "tenuous." He felt she would be cognitively inefficient in carrying out work demands and that her "psychological status would interfere with reliable persistent work behavior." He felt she would improve with treatment and that she needed "aggressive psychiatric intervention" (16F). Claimant's apparent lack of effort at times negatively affects her credibility. Dr. Cripes' evaluation appears to be based largely on subjective complaints and the functional limits that he assessed are given little weight.

(Tr. 21-23).

The ALJ ultimately concluded Plaintiff's ability to work was compromised by nonexertional limitations (Tr. 27). Specifically, the ALJ found Plaintiff suffered from major depressive disorder, anxiety disorder, and an amnestic disorder (Tr. 17). The ALJ found these impairments "give her only mild limits of daily living, mild to moderate limits on social functioning, and moderate limits on concentrations, persistence, and pace (Tr. 18). Without any physical limitation, the ALJ further concluded Plaintiff was capable of performing simple, routine tasks, with limited contact with co-workers and limited contact with supervision (Tr. 18).

The ALJ's assessment of Plaintiff's nonexertional or mental impairments is properly supported by substantial evidence in the record. As noted above, the ALJ did not find Dr. Cripe's evaluation persuasive. Rather, the ALJ relied on the opinion and assessments completed by Dr. Dahl (who found Plaintiff's condition produced moderate limitations (Tr. 21)) and Dr. Mayers (who also found only moderates and mild mental impairments (Tr. 24)). The ALJ was entitled to rely on the opinions of these medical providers, rather than the assessment of Dr. Cripe. In sum, the ALJ properly relied on substantial evidence in the record to support the decision denying Plaintiff's request for social security benefits.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver

of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 6, 2007**, as noted in the caption.

DATED this 14th day of March, 2007.

                                      /s/ J. Kelley Arnold
                                      J. Kelley Arnold
                                      U.S. Magistrate Judge